Thomas M. Melton (4999)
meltont@sec.gov
Lindsay S. McCarthy (05216)
mccarthyl@sec.gov
Daniel J. Wadley (10358)
wadleyd@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
351 South, West Temple, Ste 6.100
Salt Lake City, Utah 84101
Tel:  801-524-5796
Fax: 801-524-3558

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>TYSON D. WILLIAMS, an individual, and STANLEY D. PARRISH, an individual,<br><br>DEFENDANTS. | **COMPLAINT**<br><br><br><br>Civil No.:  2:14-cv-00510-DAK<br><br>Judge:  Dale A. Kimball. |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against Defendants Tyson D. Williams and Stanley D. Parrish (collectively, "Defendants") alleges as follows:

**INTRODUCTION**

1.     This matter involves material misrepresentations and omissions in the unregistered offer and sale of securities by Tyson D. Williams ("Williams") and Stanley D. Parrish ("Parrish"), through their company ST Ventures, LLC ("STV").

2. Beginning in approximately January 2008 through July 2012, Defendants engaged in a scheme whereby they offered and sold investment contracts and acted as unregistered brokers.

3. Defendants told investors that STV would purchase collateralized mortgage obligations ("CMOs") or interests in CMOs and then leverage the CMOs to produce a return for the investor.

4. A CMO is a type of mortgage-backed security or bond that represents claims to specific cash flows from large pools of home mortgages. The streams of principal and interest payments on the mortgages are distributed to the different classes of CMO interests, known as tranches, according to a complicated deal structure. Each tranche may have different principal balances, coupon rates, prepayment risks, and maturity dates.

5. Defendants told investors that Defendants were highly experienced in buying and selling CMOs and they had a history of locating and investing in non-traditional investments.

6. Defendants promised investors a guaranteed rate of return of between 10%-20% within 30 to 90 days of making their investment.

7. Defendants represented to investors that their investment principal would never be at risk of loss because investing in CMOs is a very safe and liquid investment.

8. Defendants raised over $7 million from approximately 50 investors in an offering fraud.

9. Defendants misappropriated over $3.5 million of investors' proceeds for their personal and STV's use.

10. Defendants paid earlier investors approximately $1.5 million with new investor money.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

12. Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

13. Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because certain of the defendants reside in and transact business in this district.

14. Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and course of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

15. Defendants' conduct took place in connection with the offer, purchase and/or sale of investment contracts issued by STV, which are securities.

## DEFENDANTS

16. **Tyson D. Williams ("Williams")**, age 42, is a resident of Washington, Utah. Williams is a director and managing member of STV. Williams solicited investors to invest with STV.

17.     **Stanley D. Parrish ("Parrish")**, age 42, is a resident of Highland, Utah. Parrish is also a director and managing member of STV. Parrish solicited investors to invest with STV.

## RELATED PARTY

18.     **ST Ventures, LLC ("STV")** is an active Utah limited liability corporation with its principal place of business in Washington, Utah. STV has not registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act in connection with the offer and sale of interests in CMOs. STV issued investment contracts and raised investor capital from approximately January 2008 through January 2011. STV was controlled by Williams and Parrish.

## STATEMENT OF FACTS

### BACKGROUND

19.     Between January 2008 and January 2011, Defendants, through STV, offered and sold investment contracts raising over $7 million from approximately 50 investors.

20.     STV did not file a registration statement with the Commission.

21.     Defendants offered and sold these investment contracts to residents of several states.

22.     Defendants promoted, offered and sold the investment contracts using the Internet, emails and telephone conference calls.

23.     Many of the investors who purchased investment contracts from the Defendants had minimal investment experience.

24.     Defendants took no steps to inquire as to the experience, background or financial status of investors to whom they sold investment contracts.

4

25. Defendants actively promoted investments in STV by holding marketing meetings in investors' homes and in STV's office, by email and over the telephone.

26. Defendants asked friends and family members to provide referrals of "high net worth" individuals who would be interested in making a large return on their investment within 30 to 90 days.

27. Defendants told investors that the funds would be used to purchase high yield CMOs or CMO tranches that held valuable commercial and residential mortgages rated AA or AAA.

28. Defendants told investors that their funds would be pooled with other investors' funds, including Defendant's friends and family members.

29. Defendants assured investors that 100% of their investment funds would be used to purchase CMOs or CMO tranches.

30. Defendants assured investors that no investor money would be used to pay for their personal living expenses.

31. Defendants told investors that STV would receive income from the interest payments earned by the CMOs or CMO tranches, which would be passed on to the investors.

32. Defendants told investors that they could guarantee a return of 100% of investors' investment principal, plus an additional 10% to 20% in interest income within 30 to 90 days of making their investment.

33. Defendants claimed that they could guarantee such a high rate of return because they already had deals in place with companies who wanted to use the CMOs or CMO tranches purchased by STV as collateral to establish lines of credit. In return, STV would receive large fees from the companies once their lines of credit had been established.

34. Defendants assured investors that, even though the companies would use the CMOs or CMO tranches as collateral, there was no risk of investors losing their money because the CMOs would remain in STV's name and in its brokerage accounts.

35. Defendants did not provide investors with any financial statements, private placement memoranda or other offering documents that provided any material disclosures explaining the investments.

36. Despite this lack of information, Defendants raised over $7 million from investors who testified they invested with Defendants because they drove expensive cars, lived in large homes, and shared the same religious affiliation.

## MATERIAL MISREPRESENTATIONS AND OMMISSIONS

### A. Safety of the Investment

37. Between November 2008 and December 2009, Williams and Parrish purchased four interest only ("IO") CMO tranches for $2,020,374.44.

38. The prospectuses for each IO CMO purchased by Defendants expressly states that investors will not receive their investment principal back when investing in an IO CMO.

39. This information was confirmed by Raymond James Financial Services, Inc. ("Raymond James"). Raymond James "Fixed Income Trading Department" manager provided Williams a letter that stated when investors invest in an IO CMO tranche, no investment principal will be returned to the investor.

40. Each CMO prospectus also discloses investing in an IO CMO tranche is highly risky.

41. The prospectuses advise that the mortgages held in an IO tranche will be sensitive to the interest rates being charged on mortgages.

6

42. In addition, the prospectuses also disclose that the timing of prepayments of principal and the risk of foreclosures make it very difficult for an investor to liquidate their position in IO tranche of a CMO investment.

43. Despite this information, Defendants represented to investors that investing in STV was a safe and liquid investment.

44. Defendants never told investors that their money was being invested in IO CMO tranches.

45. Prior to the investment, defendants did not provide all STV's investors with a copy of a CMO prospectus.

46. Two investors received a copy of the CMO prospectuses, but those investors received this information at least a year after investing with STV.

### B.     Defendants Prior Investment Experience

47. Defendants falsely claimed that they had prior investment experience in buying and selling CMOs or CMO tranches.

48. While Williams or Parrish had some investment experience, some of that experience involved the loss of approximately $2 million in a Ponzi scheme in 2006 -2007.

49. In addition, Williams, who had been a registered representative associated with a broker-dealer, terminated his employment with the broker dealer and let his license lapse after an investor complainant involving unauthorized trades in a customer account.  This information was not disclosed to investors.

### C.     Use of Investor Funds

50. When investors did not receive 10% to 20% returns on their money within 30 to 90 days of investing as promised by Defendants, they told some investors they had not received

7

interest income or fees because the companies STV had contracted with to use the CMOs or CMO tranches as collateral to establish lines of credit were slow in paying for the use of the CMOs.

51. This information was false as no business had used STV's CMOs or CMO tranches as collateral. This information was not disclosed to investors.

52. In at least one instance, Defendants transferred control of one CMO to a foreign company. This transfer was contrary to Defendant's representations to investors that the CMOs would remain in STV's name and in its brokerage accounts. The CMO was never returned or paid for by the foreign company.

53. After the loss of the CMO, Defendants failed to disclose to investors that they had lost a CMO.

54. Defendants also failed to disclose to investors that they sold a CMO tranche and used the proceeds from the sale to pay for their personal living expenses.

55. Beginning in June 2008 and continuing through July 2012, Defendants used funds from new investors to make purported interest payments to previous investors.

56. Defendants used approximately $1,508,408.00 of the $7 million raised from investors to pay earlier investors.

57. Defendants told investors who did receive money that investors were receiving principal and interest income from returns generated by the CMOs or CMO tranches purchased by STV.

58. Defendants did not tell investors that money from new investors was being used to pay earlier investors.

59. In addition, beginning in January 2008 and continuing through July 2012, Defendants misappropriated approximately $3,558,912.85 in investor proceeds and used it for their personal or business expenses.

60. Despite promises to the contrary, Defendants used investor money to pay for their daily expenses, home mortgage payments, real estate investments, civil judgments, and family medical bills, including a Botox treatment for Williams' wife.

61. Defendants also used investor money to pay STV business expenses without telling investors.

62. The Defendants were not registered with the Commission in any capacity at the time they offered and sold investment contracts to investors in several states.

63. The Defendants actively solicited investors through meetings and conference calls over a period of years.

64. As explained above, Defendants used over $3 million in investor funds to maintain a lavish lifestyle, repay family members for prior investment losses in an unrelated scheme and for STV business expenses.

**FIRST CAUSE OF ACTION**
**EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD**
**Violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]**

65. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 64 above.

66. Defendants Williams and Parrish, by engaging in conduct described above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, employed devices, schemes, or artifices to defraud.

67. By reason of the foregoing, Williams and Parrish, directly or indirectly, violated, and unless restrained and enjoined by this Court, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## SECOND CAUSE OF ACTION
## FRAUD IN THE OFFER AND SALE OF SECURITIES
**Violations of Section 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)]**

68. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 64 above.

69. Defendants Williams and Parrish, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, obtained money or property by means of making an untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

70. By reason of the foregoing, Williams and Parrish, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## THIRD CAUSE OF ACTION
## FRAUD IN CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

71. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 64 above.

72. Defendants Williams and Parrish, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of

the mails, in connection with the purchase or sale of securities, with scienter: (1) employed devices, schemes, or artifices to defraud; (2) made untrue statements of material fact or omitted to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or (3) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

73. By reason of the foregoing, Williams and Parrish violated, and unless restrained and enjoined will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CAUSE OF ACTION
## OFFER AND SALE OF UNREGISTERED SECURITIES
### Violation of Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]

74. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 64 above.

75. Defendants Williams and Parrish, and each of them, by engaging in the conduct described in the paragraphs above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, offered to sell or sold STV securities or, directly or indirectly, or carried such securities through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

76. No registration statement has been filed with the Commission or has been in effect with respect to these securities.

77. By reason of the foregoing, the Defendants, directly or indirectly, violated, and unless enjoined will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FIFTH CAUSE OF ACTION
**OFFER AND SALE OF SECURITIES BY AN UNREGISTERED BROKER OR DEALER**
**Violation of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]**

78.     The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 64 above.

79.     Defendants, and each of them, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase and sale of securities in STV without being registered as a broker or dealer with the Commission or associated with a broker-dealer registered with the Commission.

80.     By reason of the foregoing, Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. 78o(a)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the violations charged herein.

### II.

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that permanently enjoins Defendants, and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from

engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act and Sections 10(b), and 15(a) of the Exchange Act and Rule 10b-5 thereunder.

### III.

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act.

### IV.

Enter an order directing Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains.

### V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated July 10, 2014.

Respectfully submitted,

/s/Thomas M. Melton (4999)
meltont@sec.gov
Attorney for Plaintiff