**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| TYSON D. WILLIAMS, an individual, and STANLEY D. PARRISH, an individual, | Case No. 2:14-CV-510-DAK |
| | Judge Dale A. Kimball |
| Defendants. | |

This matter is before the court on Plaintiff Securities and Exchange Commission's ("SEC's") Motion for Disgorgement, Prejudgment Interest, and Civil Penalties against Defendant Tyson D. Williams. The motion has been fully briefed. The court concludes that a hearing would not significantly aid its determination of the motion. Accordingly, the court issues the following Memorandum Decision and Order based on the written submissions of the parties and the law and facts relevant to the pending motion.

## BACKGROUND

On July 10, 2014, the SEC filed a Complaint alleging several causes of action against Defendants Tyson D. Williams and Stanley D. Parrish related to the fraudulent offer, sale, and purchase of securities. Specifically, Messrs. Williams and Parrish, through their company ST Ventures, LLC ("STV"), raised money from investors to purchase Collateralized Mortgage Obligations ("CMOs") or interest in CMOs to produce a return for the investors. A CMO is a type of mortgage-backed security or bond that represents claims to specific cash flows from large pools of home mortgages.

Between January 2008 and January 2011, Messrs. Williams and Parrish raised money from investors by offering and selling investment contracts through STV. Between November 2008 and December 2009, Messrs. Williams and Parrish purchased CMOs using some of the investor funds. Beginning in June 2008 and continuing through July 2012, Messrs. Williams and Parrish allegedly used some of the money raised from investors to make purported interest payments to previous investors and allegedly misappropriated some of the investor funds and used it for personal or business expenses.

On November 24, 2015, Mr. Williams filed a Consent to Entry of Judgment in this case. On April 18, 2016, Mr. Parrish also filed a Consent to Entry of Judgment. Pursuant to the terms of the consent agreements, Messrs. Williams and Parrish, without admitting or denying allegations in the Complaint, consented to the entry of Judgment and to the payment of disgorgement and civil penalties as determined by the court and prejudgment interest as calculated based on the rate of interest used by the Internal Revenue Service ("IRS").

After judgment was entered against Mr. Williams, the SEC filed a Motion for Disgorgement, Prejudgment Interest, and Civil Penalties against Tyson D. Williams on March 24, 2016. Mr. Williams filed a response, and the SEC filed a reply. After judgment was entered against Mr. Parrish, the SEC filed a Motion for Disgorgement, Prejudgment Interest, and Civil Penalties against Stanley D. Parrish on April 27, 2016. Mr. Parrish did not file a response. The SEC noted in its reply to Mr. Williams's response that, because the SEC is requesting that the disgorgement, prejudgment interest, and penalties be imposed jointly and severally against Mr. Williams and Mr. Parrish, the SEC considered its reply brief to be in support of both of its motions.

**DISCUSSION**

Although Mr. Williams does not admit or deny allegations in the Complaint, Mr. Williams disputes the SEC's characterization of his use of investor funds. According to Mr. Williams, the SEC understated the costs of STV's investments in CMOs and mischaracterized some bank deposits as investments instead of loans from family and friends, transfers between bank accounts, or personal loans from Mr. Williams to his business. In this memorandum, the court will determine the amount of disgorgement, prejudgment interest, and civil penalties against Mr. Williams based on the information provided to the court by the parties.

**DISGORGEMENT**

The SEC may seek, and the courts may order, disgorgement of ill-gotten gains in injunctive actions brought by the SEC. *See SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972) ("We hold that it was appropriate for the district court to order appellants to disgorge the proceeds received in connection with [a violation of securities laws]."); *SEC v. Intelliquis Int'l, Inc.*, No. 2:02-CV-674-PGC, 2003 WL 23356426, at *16 (D. Utah Dec. 11, 2003) ("The decision whether to award disgorgement, as well as the amount, is in the broad discretion of the court."). The "SEC and the public have a substantial interest in the deterrence of securities violations." *SEC v. Egan*, 856 F. Supp. 401, 402 (N.D. Ill. 1993). Disgorgement serves this interest by "depriv[ing] a wrongdoer of his unjust enrichment" and "deter[ring] others from violating the securities laws." *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989); *see also SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir. 1971) ("It would severely defeat the purposes of the Act if a violator of Rule 10b-5 were allowed to retain the profits from his violation.").

The amount of disgorgement should include all gains flowing from illegal activities, plus prejudgment interest, and "need only be a reasonable approximation of profits causally connected to the violation." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1995) (citation omitted); *see also SEC v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006). The burden then shifts to the defendant to show the inaccuracy of an approximation of the disgorgement amount. *First City Fin.*, 890 F.2d at 1232; *SEC v. Randy*, 38 F. Supp. 2d 657, 674 (N.D. Ill. 1999). Courts resolve ambiguity in a disgorgement calculation against the defrauding party. *First City Fin.*, 890 F.2d at 1232.

Mr. Williams consented to pay the amount of disgorgement that the court determines to be appropriate, but Mr. Williams and the SEC disagree on the appropriate amount. The issue turns on whether Mr. Williams was using the money obtained from investors for the purposes that the investors were told that the money would be used for. In other words, to the extent that Mr. Williams used the money from investors to purchase CMOs or to make interest payments to investors, the money is not subject to disgorgement. But to the extent that Mr. Williams used the money from investors for other purposes, such as for business or personal expenses, the money should be subject to disgorgement.

The parties dispute both the amount that was obtained from investors and the amount that was used to purchase CMOs and make interest payments to investors. After agreeing upon some adjustments to its calculations, the SEC claims that Mr. Williams raised $6,703,415.29 from investors, but Mr. Williams claims that the SEC is overestimating the amount raised by $682,250. According to Mr. Williams, the SEC is improperly counting personal loans from family and friends, transfers between bank accounts, and personal loans from Mr. Williams to his business as investor funds. The SEC argues that Mr. Williams has provided no evidence other

than his own self-serving declaration that these deposits were personal loans instead of investments in the CMOs and points out that two of the individuals allegedly providing personal loans were also investors. The SEC also argues that the alleged transfers between accounts are based solely on Mr. Williams's best memory and do not coincide with the SEC's conclusions after reviewing the transfers.

The SEC has provided enough information to form a reasonable approximation of the amount that Mr. Williams raised from investors. Therefore, the burden shifted to Mr. Williams to show the inaccuracy of the approximation. In order to meet his burden, Mr. Williams must do more than provide a self-serving declaration that a portion of the amount did not come from investors. This is especially true where Mr. Williams is claiming that some of the money from investors was provided as personal loans.

Given the lack of support for Mr. Williams's claims and the guiding principle that courts resolve ambiguities against the defrauding party, the court concludes that the SEC's calculation of $6,703,415.29 as the amount that Mr. Williams raised from investors is a reasonable approximation of the amount raised.

In terms of the amount that was used to purchase CMOs and make interest payments to investors, the SEC gives Mr. Williams credit for $3,591,930.40. Mr. Williams claims that the SEC failed to take into account additional purchases of CMOs totaling $1,135,244. In support of his claim, Mr. Williams offers evidence of wire transfers and withdrawals going to Brown and Farmer and a James Boardman. In his declaration, Mr. Williams explains that Brown and Farmer is a California law firm that assisted in the purchase of the CMO at issue and James Boardman was the facilitator of the purchase. Mr. Williams also points to an operating agreement to confirm the total purchase price. Despite all of the evidence from Mr. Williams, the SEC argues

that Mr. Williams never provides evidence that a purchase of a CMO was ever made, and no purchase relating to the funds in question ever appeared as a completed purchase in the relevant brokerage account statements. Another purchase claimed by Mr. Williams also never appeared as an asset in the relevant brokerage account.

Again the SEC has met its burden of providing enough information to form a reasonable approximation of the CMO purchases by Mr. Williams, and, again, Mr. Williams has failed to meet his burden of showing that the SEC's approximation is inaccurate. The investors provided funding to Mr. Williams with the understanding that all of the funding would be used to purchase CMOs that would become assets in the brokerage account associated with STVs investments. Therefore, regardless of what other evidence Mr. Williams provides regarding money going into and out of Mr. Williams's accounts and money being used to purchase CMOs, Mr. Williams must include information about the purchased CMOs being added as assets to STV's brokerage account in order to meet his burden.

Given the lack of evidence from Mr. Williams regarding the allegedly purchased CMOs becoming assets in the relevant brokerage account, the court concludes that the SEC's calculation of $3,591,930.40 as the amount Mr. Williams used to purchase CMOs and make interest payments to investors is a reasonable approximation of the amount used.

Therefore, the court concludes that the appropriate amount of disgorgement is $3,111,484.89, which is the difference between the amount raised by investors, $6,703,415.29, and the amount used to purchase CMOs or make interest payments to investors, $3,591,930.40.

## PREJUDGMENT INTEREST

Like the decision to grant disgorgement, the decision of whether to award prejudgment interest is left to the broad discretion of the court. *First Jersey Sec., Inc.*, 101 F.3d at 1476.

Requiring a defendant to pay interest prevents the defendant from obtaining the benefit of "what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).

In this case, Mr. Williams consented to pay prejudgment interest on the amount of disgorgement that the court determines to be appropriate and did not object to the SEC's method for calculating prejudgment interest. Therefore, the court concludes that prejudgment interest should be awarded against Mr. Williams in the amount of $1,067,778.29, which is the amount calculated by the SEC for a disgorgement amount of $3,111,484.89.

## CIVIL PENALTIES

The Securities Act and the Exchange Act permit the SEC to seek civil penalties for each violation of the federal securities laws. Securities Act, 15 U.S.C. § 77t(d); Exchange Act, 15 U.S.C. § 78u(d)(3). "Disgorgement alone is an insufficient remedy" because "there is little deterrent in a rule that allows a violator to keep the profits if [he] is not detected, and requires only a return of ill-gotten gains if [he] is caught." *SEC v. Inorganic Recycling Corp.*, No. 99 Civ. 10159 (GEL), 2002 WL 1968341, at *4 (S.D.N.Y. Aug. 23, 2002). A third-tier penalty is appropriate where the violations (1) involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Securities Act, 15 U.S.C. §§ 77t(d)(2)(c); Exchange Act, 78u(d)(3)(b)(iii). For violations occurring between the dates of February 1, 2008, and November 30, 2015, third tier civil penalties may be imposed as a rate of up to $130,000 per violation for each natural person, but imposition of these penalties requires proof of "substantial losses or risk of losses to others." 17 C.F.R. § 201.1003.

The SEC argues that Mr. Williams qualifies for third-tier penalties. Mr. Williams asks the court to waive any civil monetary penalty or, if the court is inclined to impose a penalty, to impose only one third-tier penalty. The court is inclined to impose a penalty to provide a sufficient deterrent to Mr. Williams and others in situations similar to his. But the court agrees with Mr. Williams that one third-tier penalty is sufficient to achieve the goals of the civil penalty statutes. Therefore, the court imposes one third-tier penalty in the amount of $130,000.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the SEC's Motion for Disgorgement, Prejudgment Interest, and Civil Penalties against Tyson D. Williams is GRANTED. The court orders disgorgement in the amount of $3,111,484.89, prejudgment interest in the amount of $1,067,778.29, and a civil penalty in the amount of $130,000. Because the SEC requests that the disgorgement, prejudgment interest, and penalties against Mr. Williams be imposed jointly and severally with Defendant Stanley D. Parrish, the SEC's Motion for Disgorgement, Prejudgment Interest, and Civil Penalties against Stanley D. Parrish is also GRANTED.

DATED this 30th day of June, 2016.

BY THE COURT:

DALE A. KIMBALL
United States District Judge